### Theodore Vogt v. The People of the State of Illinois.

1. TRADE-MARKS—*Counterfeit Labels.*—In a prosecution for selling cigars from a box having upon it a counterfeit label, under the act of 1891, to protect associations, unions of workingmen, etc., in their labels, it is incumbent on the prosecution to show that at the time the defendant sold the cigars from the box upon which this label alleged to be counterfeit was used, he knew the label was counterfeit.

2. NOTICE—*What is—Of a Counterfeit Label.*—The fact that two strangers who bought cigars at a stand informed the seller that the label upon the box from which he sold them was counterfeit, is not necessarily sufficient to show that the seller sold the cigars knowing the label to be counterfeit.

Complaint, for selling cigars from a box having upon it a counterfeit label. Appeal from the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the February term, 1895. Reversed and remanded. Opinion filed July 1, 1895.

WISE & McNULTY, attorneys for appellant.

M. W. SCHAEFER, State's Attorney, and M. W. BORDERS, attorneys for appellees.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

This is a prosecution under the act of 1891, " To protect associations, unions of workingmen," etc., " in their labels,"

etc., and the complaint filed herein puts the alleged offense under section two of said act.  Said section is as follows: "Every person who shall use any counterfeit or imitation of any label, trade-mark, or form of advertisement of any such person, union or association, knowing the same to be counterfeit or imitation, shall be guilty of a misdemeanor, and shall be punished," etc.  Hurd's R. S. Ill., 1893, p. 1456.

The complaint charges that Vogt "did willfully, unlawfully and knowingly use an imitation of a certain label, trade-mark and form of advertisement of Cigar Makers' International Union No. 250, of Belleville, Illinois, upon certain boxes containing cigars, then and there sold and handled by the said Theodore Vogt, he, the said Theodore Vogt, then and there knowing the said label, trade-mark and form of advertisement to be an imitation of the true and genuine label, trade-mark and form of advertisement adopted by said Cigar Makers' International Union No. 250, of Belleville, Illinois, contrary to the statute," etc.

The evidence in this record, taken as a whole, does not, in our judgment, establish the defendant's guilt of the offense charged.  An essential fact to be proved was that at the time he sold, or permitted the sale of cigars from a box on which the label alleged to be counterfeit was used, he knew the label was a counterfeit of that adopted by "Cigar Makers' International Union No. 250, of Belleville, Illinois." The evidence of two witnesses is relied on for such proof, in the nature of notice to defendant, informing him of the real character of the label used.  Bux, one of these witnesses, testified he was president of the Belleville union, and general president of all committees, and went to defendant's place in East St. Louis, on June 13, 1894, called for a certain brand of cigar, and defendant handed out a box which had a bogus label on it, out of which box witness took a cigar and paid for it, then said to defendant, "This is a bogus label, counterfeit, and you will do me a great favor if you will not sell any more, because I am a committee to tell you as a friend;" that within an hour he again went to appellant's place and called for a cigar; the barkeeper sold him one out

of a box with a counterfeit label on it, the same box as the one
he had before taken a cigar from, and witness said nothing,
but paid for the cigar and returned to his home in Belle-
ville.

This witness testified in chief he had known Vogt since
the 1st day of June, 1894, but on cross-examination said
Vogt was a total stranger to him on June 13th of that year.
The other witness, Renterman, was a member and one of
the executive committee of the Belleville Cigar Makers'
Union. He testified that on June 13, 1894, Vogt was an
utter stranger to him, and on that day he was in his saloon
and heard him say to some persons in there: "There was
a young boy came in here and told me about selling cigars
with a counterfeit label;" that he, witness, listened a little
while to the conversation, and when about to leave, said to
Vogt: "That boy that told you about those cigars having
a counterfeit label I think is right;" and told Vogt not to
sell any more of those cigars, because he was liable to get
into trouble; and Vogt replied he had bought those cigars
and paid for them and he was going to sell them, it made
no difference what was on them; that half an hour after that,
witness and Bux went in Vogt's place and asked for a cigar;
did not ask for any special kind, and the barkeeper took
the box and shoved it out in front of them. These witnesses
also testified to some admission of Vogt at the trial before
the justice, to the effect he had sold cigars from a box
with counterfeit label after he was notified, but he evidently
referred to the notice those witnesses gave him on June
13th. In this connection it is proper to remark, the judge
who tried the case below was not able to distinguish the
difference between the genuine label and that alleged to be
counterfeit, which were introduced in evidence, except by a
private mark on the genuine, pointed out by Bux, who ad-
mitted that a person not a member of the union, who did
not know the private mark, would be unable to tell whether
this label was genuine or not.

Appellant testified Bux came into his place June 13, 1894,
and he never before knew him; said nothing about a com-

mittee; asked, " Are you Mr. Vogt ? " was answered, " Yes;" took a cigar out of the box and said, " You had better not sell these cigars any more;" and when asked why not, replied, " It is a bogus label." Witness then said, " I don't know whether it is or not; I feel quite easy about it; I got them from a union factory." Bux said, " You had better not sell any more;" and witness replied, " They are bought and paid for and I have got to sell them." As to Renterman, appellant testified he said, " You might be mistaken; you can't sell these cigars if you did buy and pay for them." And appellant replied substantially as he had to Bux, and further testified : " The cigars came from Pennsylvania; they were bought from a union factory; never had an idea that it was not a good label; they came with union labels on and I bought them for union made cigars; never heard any complaint until these men came there." Ahring, for defendant, testified he had been Vogt's manager for ten years prior to June, 1894; that the box of cigars came from Pennsylvania with the label on; that the house from which the cigars were bought handled union made cigars. From all the evidence, it appears defendant had as much right to rely on the information received from the Pennsylvania house, and believe they were not vending cigars with spurious labels on the boxes, as he had to believe the statement of the two witnesses for the prosecution to the contrary, made to him on June 13th. They were utter strangers to him. Neither of them pointed out any mark indicating the label on the box in his place was counterfeit, or disclosed any means they possessed enabling them to know it was such, and the fact that after they had notified him, they came back and bought cigars out of the same box without remark or objection, would justify him in believing they had been mistaken in condemning the label as counterfeit, and disregarding their statements. He had no right to assume if they knew it was counterfeit, they would assist him by their patronage in perpetrating a fraud. This fact would seem sufficient to dispense with the necessity for further inquiry on his part, if any necessity indeed ex-

isted for doing so.   We reach the conclusion, then, that appellant had no knowledge, from what was said to him by the two witnesses, that the label used was an imitation of the genuine label adopted by Cigar Makers' Union No. 250, before mentioned, but believed, after the notice they claimed to have given him, and up to the time of the trial before the justice, that the label put on by the Pennsylvania house was genuine.   Moreover, the cigars sold by him were union made cigars, as appears by the uncontradicted evidence, and whatever might have been the character of label, genuine or counterfeit, he did not use it for the purpose of inducing purchasers to buy cigars made by non-union makers, and thus do the mischief the statute was enacted to prevent.   We think, therefore, in view of all the evidence, the conviction of appellant was not warranted, and the judgment is reversed and cause remanded.